FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 19, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELIZABETH LINN S., | |
| Plaintiff, | No. 2:18-CV-00249-RHW |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 15. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and her application for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1, 15, 30. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.  Jurisdiction

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income on July 8, 2015. *See* AR 15, 207-08, 209-218. In both applications, Plaintiff's alleged onset date of disability was March 1, 2015. AR 15, 207, 210. Plaintiff's applications were initially denied on September 22, 2015, *see* AR 129-137, and on reconsideration on January 10, 2016. *See* AR 140-151. Plaintiff then filed a request for a hearing on February 12, 2016. AR 152-53.

A hearing with Administrative Law Judge ("ALJ") Jesse K. Shumway occurred on April 13, 2017. AR 39, 41. On June 30, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits or supplemental security income. AR 12-30. On June 11, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On August 8, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 6. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

*///*

## II.  Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do her or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

## III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 49 years old on the alleged date of onset. AR 82. She attended school through the ninth grade and can communicate in English. AR 58, 80, 209, 237, 239. Plaintiff has past work as a customer service sales representative and customer complaint clerk. AR 28, 90, 240, 247.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from March 1, 2015 (the alleged onset date) through June 30, 2017 (the date the ALJ issued the decision). AR 30.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (citing 20 C.F.R. § 404.1571 *et seq*.). AR 17.

///

///

At step two, the ALJ found Plaintiff had the following severe impairments: supraventricular tachycardia, cardiomyopathy, morbid obesity, and diabetic neuropathy (citing 20 C.F.R. § 404.1520(c)). AR 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 21.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), including the abilities to stand and walk in combination for a total of two hours in an eight-hour workday, carry 10 pounds occasionally and five pounds frequently, occasionally perform all other postural activities, and frequently handle. AR 22. However, the ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds. AR 22. The ALJ also found that Plaintiff could have no concentrated exposure to extreme cold or heat, wetness, pulmonary irritants, or vibration, nor could she have any exposure to hazards such as unprotected heights or moving mechanical parts. AR 22. Given these physical limitations, the ALJ found that Plaintiff was able to perform her past relevant work as a customer complaint clerk, which is sedentary, skilled work. AR 28.

In the alternative, the ALJ also found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that

existed in significant numbers in the national economy that she could perform. AR 28. These included a production assembler, electronics worker, and mail clerk. AR 29.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 13 at 14. Specifically, she argues the ALJ: (1) failed to properly evaluate the functional impact of her morbid obesity condition; and (2) improperly discredited her subjective pain complaint testimony. *Id.* at 2.

## VII.   Discussion

### A.    The ALJ Properly Considered Plaintiff's Obesity in Assessing her Residual Functional Capacity

The ALJ found that morbid obesity was among Plaintiff's severe impairments. AR 17. Plaintiff argues that despite this finding, the ALJ failed to actually assess the functional impact of her obesity individually and in combination with her other impairments, as agency regulations require. ECF No. 13 at 3-5.

Obesity is not by itself disabling and is no longer a listed impairment. *See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria*, 64 Fed. Reg. 46122 (effective October 25, 1999) (de-listing 9.09 "Obesity" from Appendix 1, Subpart P of Part 404). However, obesity is still a medically determinable impairment and ALJs must, under certain circumstances,

consider its interactive effect upon a claimant's other impairments and residual

functional capacity. *See Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003); *see*

*also* 20 C.F.R. Part 404, Subpart P, Appendix 1, ¶¶ 1.00Q, 3.00O & 4.00I; Social

Security Ruling 02-1p (2002). The regulations acknowledge that the combined

effects of obesity with other impairments can be greater than the effects of each

impairment considered separately, and they instruct ALJs to consider any

additional and cumulative effects of obesity under the listings and throughout the

other steps of the sequential evaluation process, including when assessing an

individual's residual functional capacity. *See* 20 C.F.R. Part 404, Subpart P,

Appendix 1, ¶¶ 1.00Q, 3.00O & 4.00I. The regulations also list examples of

functional limitations obesity can cause, such as fatigue and the ability to

manipulate. *See* Social Security Ruling 02-1p § 8, ¶¶ 2, 4.

Contrary to Plaintiff's assertions, the ALJ properly evaluated and analyzed

the effects of her obesity in this case. The ALJ first addressed the issue at step

three of the sequential evaluation process, when assessing whether Plaintiff met or

medically equaled one of the listed impairments. AR 22. Citing the same Social

Security Ruling that Plaintiff relies on in her brief, the ALJ acknowledged that

obesity can sometimes medically equal a listed impairment or meet the

requirements of a listing in combination with another impairment. AR 22 (citing

Social Security Ruling 02-1p).[1]  However, the ALJ, incorporating by reference his thorough discussion of the medical record, found that Plaintiff's obesity was not of listing-level severity either by itself or in combination with her other impairments. AR 22. Plaintiff does not challenge this finding.

The ALJ also addressed Plaintiff's obesity at step four of the sequential evaluation process, when assessing her residual functional capacity. AR 24-25. The ALJ first addressed the interactive effect of Plaintiff's obesity with her severe heart conditions (supraventricular tachycardia and cardiomyopathy). AR 24. The ALJ outlined the records from Plaintiff's treating cardiologist, who had noted Plaintiff's morbid obesity. AR 24; *see* AR 555. However, the ALJ observed that after Plaintiff's ablation procedure, her heart palpitations were mild and intermittent. AR 24; *see* AR 553. The ALJ further observed that she had no arrhythmias, her cardiovascular functioning appeared largely normal, and she denied experiencing numerous other cardiovascular symptoms, including chest pain, syncope, presyncope, dizziness, or fatigue. AR 24; *see* AR 554. The ALJ noted that based on these findings, Plaintiff's treating cardiologist rated her as having a New York Heart Association Class II functional classification, which is consistent with only mild symptoms or a slight limitation in physical activity. AR 24; *see* AR 555-56,

---

[1] The Social Security Administration has since rescinded this Social Security Ruling and replaced it with Social Security Ruling 19-2p. *See* 84 Fed. Reg. 22924 (effective May 20, 2019). However, the Administration asks federal courts to "review [its] final decisions using the rules that were in effect at the time [it] issued the decisions." *Id.* n.14.

567. The ALJ also noted that Plaintiff's tachycardia appeared to be fairly stable. AR 25. Given all of this, the ALJ concluded that Plaintiff's symptoms would be unlikely to cause significant limitations if they occurred in a work environment. AR 24.

Next, the ALJ discussed and analyzed the interactive effect of Plaintiff's obesity with her diabetic neuropathy. AR 25. The ALJ acknowledged that Plaintiff's obesity caused her to have limited range of motion in many joints, as well as an unstable tandem walk and a lumbering gait. AR 25; *see* AR 364, 366-67. However, the ALJ noted that in other physical examinations she demonstrated normal gait, station, muscle strength, and motor function with full bulk, tone, and power. AR 25; *see* AR 420. The ALJ also noted Plaintiff's negative Romberg's test, which assesses balance. AR 25; *see* AR 364. Moreover, the ALJ emphasized Plaintiff's normal sharp/blunt distinction in both hands, her largely intact motor strength in both her upper and lower extremities, and her ability to handle, grasp, and manipulate items. AR 25; *see* AR 364, 374. The ALJ also noted that Plaintiff's gabapentin medication helped her neuropathy symptoms. AR 25; *see* AR 481. Given all of this, the ALJ concluded that the combined effect of Plaintiff's obesity and neuropathy did not create greater limitations than those outlined in the residual functional capacity. AR 25.

Plaintiff challenges the ALJ's finding at step four of the sequential evaluation process, arguing that the ALJ improperly evaluated her obesity in assessing her residual functional capacity. ECF No. 13 at 3-8. Specifically, Plaintiff contends the ALJ failed to address the effect her obesity had in combination with her fatigue and ability to handle objects. *Id.* at 5-6. To establish that the ALJ inadequately considered obesity in the residual functional capacity finding, the law requires Plaintiff to set forth evidence that her obesity created additional functional limitations that the ALJ failed to consider. *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005); *Timothy J. v. Comm'r of Soc. Sec.*, No. 1:17-CV-03125-JTR, 2018 WL 4179100, at *6 (E.D. Wash. 2018).

Here, Plaintiff has not done so. Plaintiff points to her testimony that she tires easily and the fact that she reported fatigue to her medical providers. *See* ECF No. 13 at 5. However, the ALJ did in fact consider this—in assessing the interactive effect of Plaintiff's obesity and heart conditions, the ALJ noted that Plaintiff denied fatigue symptoms after her ablation procedure. *See* AR 24. Moreover, Plaintiff cites to no medical evidence in the record relating her obesity and fatigue symptoms, and in any event, she expressly testified that these symptoms were attributable to her heart conditions. *See* AR 61, 404, 476, 564.

Plaintiff also points to her testimony that she has trouble writing, typing, holding onto cups, and using the telephone. *See* ECF No. 13 at 6. Again, the ALJ

did in fact consider this, finding that despite Plaintiff's obesity, "[o]verall dexterity also appeared adequate as her ability to handle, grasp, and manipulate did not appear to be affected." AR 25. Plaintiff again cites to no medical evidence in the record relating her obesity and inability to handle objects, and in any event, she expressly testified that these symptoms were attributable to her hand tremor condition. *See* AR 63.

The record demonstrates that the ALJ appropriately considered and discussed Plaintiff's obesity and how it, along with her other severe impairments, limited her functional capacity. Nor has Plaintiff "pointed to any evidence of functional limitations *due to obesity* which would have impacted the ALJ's analysis." *Burch*, 400 F.3d at 683 (emphasis added).

## B. The ALJ did not Improperly Reject Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 13 at 8-13. Plaintiff alleges the ALJ discredited her testimony based on a lack of corroborating medical evidence and makes various other arguments regarding the ALJ's analysis of her testimony and her daily activities. *Id.* at 9-13.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce some degree of the symptoms Plaintiff alleged. AR 23. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 23.

The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 29. First, the ALJ reasoned that

Plaintiff's allegations of completely debilitating physical limitations were inconsistent with the medical record, which showed that after her ablation procedure in August 2016, her heart-related impairments were largely stable and unremarkable except for rare arrhythmias. AR 23. The ALJ noted that Plaintiff's heart examinations have consistently revealed normal cardiovascular findings. AR 23-24; *see* AR 508 (August 2016), 555 (September 2016), 571 (May 2016), 604 (August 2015), 613 (June 2015). The ALJ acknowledged that although Plaintiff experienced a sustained episode of supraventricular tachycardia around the alleged onset date, she did not experience another episode until August 2016, after which she underwent the heart ablation. AR 24, 553, 564, 617, 622-25. After the procedure, Plaintiff visited the hospital and was symptom-free, had a normal heart examination, and stated that since the ablation she had noticed only intermittent and mild fluttering. AR 24, 506. The ALJ also emphasized the fact that Plaintiff's treating cardiologist rated her as having a Class II heart function, which is consistent with only mild symptoms or a slight limitation in physical activity. AR 24; *see* AR 555-56, 567. Finally, as discussed above, the ALJ outlined the medical records relating to her neuropathy and obesity and concluded that these conditions did not prevent her from performing light work. *See infra* at 11-12. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with

the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff appears to argue that the ALJ failed to identify the specific portions of her testimony that was not credible and did not explain what medical evidence contradicted that testimony. ECF No. 13 at 9. The ALJ did in fact do so. The ALJ identified Plaintiff's testimony that: (1) she had to quit her customer service job in 2014 due to her supraventricular tachycardia and Bell's palsy symptoms; (2) the sales job caused her heart to race and breathing to shorten to the point of almost passing out; (3) she is currently unable to work due to her heart condition and hand tremors; (4) she needs assistance with housework and yardwork, and can only help with these tasks "a little bit;" (5) going grocery shopping or walking around the block fatigues her to the point where she has to stop and rest. AR 22. The ALJ then outlined the medical records described in detail above and concluded that they were inconsistent with Plaintiff's testimony. AR 26.

Plaintiff also appears to argue that the ALJ rejected her subjective pain complaints because she did not produce objective medical evidence of the pain itself. ECF No. 13 at 10-11. While Plaintiff is correct that this would be error, *see Burch*, 400 F.3d at 680, this is not what the ALJ did. Rather, the ALJ discredited

Plaintiff's testimony because the medical records affirmatively contradicted it, which is permissible.[2] *See* AR 23-25.

Second, the ALJ discounted Plaintiff's subjective complaints of severely disabling limitations because they were belied by her daily activities. AR 25. For example, she told her doctor she was mowing her lawn. *See* AR 349, 352. She also submitted a "function report" in which she indicated that she was able to cook, sweep, mop, clean for three to four hours at a time, do dishes, do laundry, shop for groceries, and go to church. AR 260-63. She also indicated that she had no problem with personal care and could lift 20 pounds. AR 260, 264. When she was at a medical appointment for facial swelling, she described how she had been outside raking her yard. AR 469. She also told her doctor that she would buy a bicycle to exercise. AR 473. Despite all this, she testified at the hearing that she was unable to independently sweep, mop, vacuum, cook, mow, rake, or grocery shop, and that she needed her mother's assistance with these tasks. AR 59-60. Activities inconsistent with the alleged symptoms—even when they suggest some difficulty functioning—are proper grounds for questioning the credibility of subjective complaints when the person claims a totally disabling impairment.

---

[2] Plaintiff also argues that the ALJ discounted her testimony because she inconsistently reported the severity of her symptoms. ECF No. 13 at 11. This was not the ALJ's reasoning—the ALJ's central point was that Plaintiff alleged near-total debilitation at the hearing and this was inconsistent with the longitudinal medical record that indicated only minor restrictions. *See* AR 22-26.

1  *Molina*, 674 F.3d at 1113; *see also Rollins*, 261 F.3d at 857; 20 C.F.R. §§

2  404.1529(c)(3)(i).

3      Plaintiff argues that the activities she described to her doctors and in her

4  "function report"—mowing, raking, cleaning, grocery shopping, etc.—are not

5  transferable to a work setting where there are performance measures, consequences

6  for tardiness, and other associated pressures. ECF No. 13 at 12-13. Plaintiff is

7  correct that ALJs must be cautious when concluding that daily activities are

8  inconsistent with pain testimony, given that many home activities may not be

9  easily transferable to a work environment where it might be impossible to rest

10  periodically or take medication. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir.

11  2014). However, if the claimant's level of activity is inconsistent with the

12  limitations he or she claims to have, this has a bearing on the claimant's credibility.

13  *Id.*; *accord Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In this case,

14  Plaintiff reported to her doctors and stated in her "function report" that she could

15  perform these daily activities, but then testified that she could not. *See* AR 59-60,

16  260-64, 349, 352, 469, 473. This was a proper basis for discounting her credibility.

17  *See Garrison*, 759 F.3d at 1016.

18      Plaintiff also argues that the ALJ erred by relying on her daily activities

19  prior to the alleged onset date. ECF No. 13 at 12. This is incorrect—the alleged

20  onset date was March 1, 2015 and Plaintiff made the above-referenced statements

in April 2015, July 2015, September 2016, and November 2016. *See* AR 15, 260-64, 349, 352, 469, 473.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because the ALJ provided multiple clear and convincing reasons for doing so.

## VIII.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.     Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED.**

3.     Judgment shall be entered in favor of Defendant and the file shall be closed.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 19th day of August, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge